# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CAROL HENNESSY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  07 C 550 |
| | ) | |
| UNIVERSITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before this court on Defendant University of Chicago's ("University") motion for summary judgment.  For the reasons stated below, we grant the motion for summary judgment.

## BACKGROUND

Plaintiff Carol Hennessy ("Hennessy") alleges that she began working for the University in 1978.  She contends that she performed her work satisfactorily and ultimately became the Department Secretary for the University's Department of East Asian Languages and Civilization ("EALC Department"), which is in the Humanities Division of the University.  According to Hennessy, on January 17, 2005, Defendant Danielle Allen ("Allen"), an employee of the University, issued Hennessy

1

termination papers indicating that Hennessy's employment was being terminated and that she was part of a pre-determined group being let go under a "layoff" and "reduction in workforce" plan. (Compl. Par. 20(a)). Hennessy claims that she was the most senior person in the pre-determined group. After Hennessy's employment was terminated, Allen allegedly created a new position to fill the gap left by Hennessy's former position. Hennessy claims that after her employment was terminated she applied for the new positions and the University denied her applications. Hennessy contends that the University terminated her employment and refused to rehire her because of her age. Hennessy includes in her complaint a claim alleging age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* On May 16, 2007, we granted Allen's motion to dismiss the claim brought against Allen. The University now moves for summary judgment on the termination and failure to hire claims brought against the University.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate

the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).


## DISCUSSION

A plaintiff bringing an ADEA claim can seek to defeat a defendant's motion for summary judgment under either the direct method of proof or the indirect method

of proof.  *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007).

Hennessy does not argue that she can prevail under the direct method of proof, but

argues that she can prevail under the indirect method of proof.  (Ans. 3-4).


I.  Direct Method of Proof

Under the direct method of proof, a plaintiff can point to evidence of "near-

admissions by [the defendant employer] that its decisions were based on a proscribed

criterion," or "sufficient circumstantial evidence in the record to demonstrate a

genuine issue of material fact."  *Hemsworth*, 476 F.3d at 490-91.  Hennessy has not

argued that she can prevail under the direct method of proof.  We agree that she has

not presented direct evidence of discrimination or sufficient circumstantial evidence

to proceed under the direct method of proof for either her termination claim or her

failure to hire claim and she must proceed under the indirect method of proof.


II.  Indirect Method of Proof

Hennessy contends that she can prevail under the indirect method of proof for

each of her claims.  Under the indirect method of proof, a plaintiff must first

establish a *prima facie* case of discrimination.  *Id.* at 492.  If a plaintiff establishes a

*prima facie* case, the burden shifts to the employer to present a legitimate non-

discriminatory reason for the action.  *Id.*  If the employer presents such a reason, the

plaintiff must show that the given reason is a pretext.  *Id.*

A.  Termination from Position

Hennessy contends that the University stated that it was terminating her employment because of a "reduction in workforce" plan, but alleges that the University was actually terminating her employment because of her age.  (Compl. Par. 20(a)).  For a reduction in work force ADEA claim, in order to establish a *prima facie* case, a plaintiff must show that: (1) she "'is a member of a protected class,'" (2) she "'was performing [her] job satisfactorily,'" (3) she "'suffered a materially adverse employment action,'" and (4) her "'job duties were absorbed by employees who were not members of [her] protected class.'"  *Id.* (quoting *Johal v. Little Lady Foods, Inc.*, 434 F.3d 943, 946 (7th Cir. 2006)).  In ADEA cases based upon an employment termination, the Seventh Circuit has also stated that the fourth prong of the *prima facie* case requires a plaintiff to show that "similarly situated employees outside of her protected class were treated more favorably by the employer." *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006).  The University concedes in regards to Hennessy's termination, that Hennessy is a member of a protected class, that she was meeting the University's legitimate employment expectations, and that she suffered a material adverse employment action.  (SJ Mem. 8).  The University contends, however, that Hennessy has failed to point to a similarly-situated employee outside the protected class that was treated more favorably and she has not shown that her position was absorbed by members outside the protected class.  The University also argues that Hennessy has not shown that its reason for her termination is a pretext.

## 1. Similarly-Situated Employees

The University contends that Hennessy has not pointed to a similarly-situated employee outside the protected class that was treated more favorably than Hennessy. For that element of her *prima facie* case, Hennessy must show "that similarly situated, substantially younger employees were treated more favorably." *Ransom v. CSC Consulting, Inc.*, 217 F.3d 467, 470 (7th Cir. 2000). In order to satisfy the similarly-situated element of the *prima facie* case, a plaintiff "must demonstrate that there is someone directly comparable in all material respects." *Barricks v. Eli Lilly and Co.*, 481 F.3d 556, 559-60 (7th Cir. 2007)(stating that "[t]he 'similarly situated' test is a flexible, commonsense inquiry whose requirements vary from case to case" and that "[i]ts purpose is to determine whether there are enough common factors between a plaintiff and a comparator-and few enough confounding ones-to allow for a meaningful comparison in order to divine whether discrimination was at play").

In the instant action, Hennessy argues that Kathy Fox ("Fox") was a similarly-situated employee outside the protected class that was treated more favorably than Hennessy. (Ans. SJ 4). Hennessy contends that Fox, who is outside the protected class was a "Departmental Secretary/Administrative Assistant," but that Fox remained in her position after the reorganization. (Ans. 3-5). Hennessy also refers to Fox on separate occasions as merely being a "Departmental Secretary." (Ans. 3). However, as the University points out, the record shows that the positions of Departmental Secretary and Administrative Assistant were different positions and the Administrative Assistant position was exempt from the reorganization. (Reply 7).

Thus, Fox could not have been both a Departmental Secretary and an Administrative Assistant. The University has pointed to evidence that indicates that Fox held the position of Administrative Assistant before the reorganization, which was a position that was exempt from the reorganization. (P Ex. Fox Eval. 1); (P Ex. Allen Dep. 19); (P Ex. Men. Dep. 24). Hennessy has thus failed to show that Fox was similarly situated.

Hennessy also mentions that in the Germanics Department, Michelle Zimet ("Zimet") was a Departmental Secretary and was allowed to change her position to that of a Department Coordinator position. (Ans. SJ 2). However, Hennessy does not offer any facts to show that Zimet was a similarly-situated employee or that Zimet was outside the protected class. In addition, Hennessy does not indicate that she even attempted to apply for the Department Coordinator position which Zimet obtained. In regard to the EALC Department Coordinator position, Hennessy admits that she was not eligible since she lacks a bachelor's degree. (R SF Par. 42). Hennessy acknowledged during her deposition that she knew she was not qualified for the Department Coordinator position since she did not have a bachelor's degree. (Henn. Dep. 56-57).

### 2. Absorption or Reinstatement of Position

Hennessy contends that although the University claims that Hennessy's employment was being terminated as part of a reduction in force plan, Hennessy's position was actually re-created after she was gone. The University contends that

Hennessy's position was not renamed or absorbed by younger employees.  The University points to evidence that shows that Hennessy's position no longer existed when she was terminated.  (Reply 7-8).  Hennessy contends that "[o]nly about one year after [she] was terminated, the position of Departmental Secretary was reinstated."  (Ans. 2).  Thus, Hennessy admits that when her employment was terminated, her position was terminated and was not simply absorbed by other employees or renamed under a different title.

Hennessy also fails to point to admissible evidence to support her contention that her position was reinstated a year after her termination.  (Ans. 2).  The only reference provided by Hennessy is a citation written as "Id. at 28.," which appears to be a citation to her response to paragraph 28 of the University's statement of material facts ("Paragraph 28").  (Ans. 2).  However, neither Hennessy's response to Paragraph 28 nor Paragraph 28 contains evidence that shows that after Hennessy's termination, the University "reinstated" the Departmental Secretary position. Hennessy cites to the deposition of Judith Zeitlin ("Zeitlin"), but during the deposition, Zeitlin indicated only that eventually the EALC Department was given a part-time secretary.  (Zeitlin Dep. 37-38).  Hennessy has failed to show that the responsibilities she had in her Departmental Secretary position were absorbed by younger employees.  The University points to contrary evidence that shows that after the reorganization, the sharing of group secretaries proved to be inefficient and that the University assigned a part-time Departmental Secretary to the EALC Department.  (Zeitlin Dep. 38, 41, 60).  The record also indicates that even after the

reorganization proved inefficient and a part time secretary was assigned to the EALC Department, Allen decided that the department could not receive a full-time secretary since there was not sufficient money in the budget for such a position. (Zeitlin Dep. 60). Thus, Hennessy has failed to point to sufficient evidence to show that her position was either absorbed by younger employees or reinstated.

### 3. Pretext Analysis

In addition, even if Hennessy could establish a *prima facie* case, she has failed to establish that the University's given reason for her termination was a pretext. The University has pointed to evidence that shows that Hennessy's termination was a part of the reorganization plan instituted by Allen. (D SF Par. 21-33). The University points to evidence indicating that Allen "believed that the Humanities Division was in need of reorganization because the existing staff structure was insufficient to support a high level academic organization in the current era." (D SF Par. 21). The University also points to the record that indicates that "[a]s a result of an outmoded staff structure, faculty members were forced to spend time on administrative functions like sorting applications and creating summaries of student applications." (D SF Par. 21). The University contends that the termination of Hennessy's employment was part of Allen's reorganization plan. The University has thus offered a legitimate non-discriminatory reason for the reorganization and the termination of Hennessy.

Hennessy contends that the reason given by the University was a pretext.

However, Hennessy points to no evidence to support such a conclusion. As indicated above, the accusation by Hennessy that her job was recreated after she was terminated is unsupported and contrary to the record. Hennessy also admits, pursuant to Local Rule 56.1, that "Allen never made any age-related comments to" Hennessy. (R SF Par. 63); *Dent v. Bestfoods*, 2003 WL 22025008, at *1 n.1 (N.D. Ill. 2003)(stating that a denial is improper if the denial is not accompanied by specific references to admissible evidence or at least evidence that represents admissible evidence); *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004)(stating "that a district court is entitled to expect strict compliance with Rule 56.1" and "[s]ubstantial compliance is not strict compliance"). Hennessy fails to point to any conduct or statements by Allen that would indicate that she desired to fire Hennessy because of her age. Hennessy was also specifically asked during her deposition for the basis for her belief that her employment was terminated because of her age. Hennessy conceded that "[t]he facts that [she had] to back up [her] belief that [she was] discriminated against are the fact that [she] lost [her] job" and the "fact that [she was] 58 years old." (Henn. Dep. 145-46). Hennessy admitted that she had no other facts to support her belief. (Henn. Dep. 145-46). Hennessy also argues that the University's reason was a pretext because Allen's "purported reorganization was met with criticism and puzzlement by faculty who viewed her reorganization as unnecessarily increasing staff expenditures." (Ans. SJ 5). However, such an argument challenges whether Allen's reorganization was a wise plan. Hennessy must show that Allen's given reason was a lie in order to show

pretext. *Ransom*, 217 F.3d at 471 (stating that "the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie"). Whether or not Allen's decisions were sound, whether Hennessy would have made other choices, or whether the reorganization plan ultimately proved to be successful are not issues that are within the focus of a pretext analysis. *Barricks*, 481 F.3d at 560 (stating that "[t]he focus of a pretext inquiry is whether the employer's reason is honest, not whether it is accurate or wise").

Hennessy also criticizes Allen in her reorganization efforts, contending that Allen "never undertook any significant work and actual analysis of the need to reorganize the Humanities Division, which included the EALC department." (Ans. SJ 2). Hennessy apparently believes that the lack of research is evidence that Allen's reorganization was simply a ploy to fire Hennessy. However, the portions of the record cited by Hennessy herself do not indicate that Allen simply began the reorganization plan on the spur of the moment without prior research or discussions. The record in fact shows that Allen did conduct research before implementing her reorganization plan. (Allen Dep. 34-37). Allen indicated, for example, that she read management books and consulted with other experienced individuals. (Allen Dep. 34-37). Hennessy also admits that before Allen became the Dean of the Humanities Division, Allen worked as a professor in the division from 1997 through 2004. (R SF Par. 17). Thus, Allen could have formulated beliefs concerning the need for reorganization based upon her own work experience in the Humanities Division. However, even if we accept as true, Hennessy's contention that Allen did not

thoroughly research her reorganization plan before implementing the plan, that would not be sufficient evidence to show that Allen lied about the reason for terminating Hennessy's employment. Rather, Hennessy's argument concerning Allen's lack of knowledge as to the needs of the Humanities Division questions the wisdom of Allen's plan, which as is indicated above, is not a proper focus for the pretext analysis.

A variety of facts are undisputed concerning Allen's decision to reorganize the Humanities Division. Hennessy admits that in the Spring of 2004 Allen was a candidate for the Deanship of the Humanities Division, and even before she accepted the Deanship, Allen "discussed the need for reorganization of that Division with the University Provost." (R SF Par. 23-24). Hennessy admits that as soon as Allen became the Dean of the Humanities Division, she began her reorganization plan. (R SF Par. 27). It is undisputed that when Allen began the reorganization, her intent was to replace secretarial positions in the Humanities Division's small departments with Department Coordinators. (R SF Par. 28). Allen anticipated that the Department Coordinators would be able to perform more than mere clerical functions and could perform a variety of useful tasks such as creating an annual budget. (R SF Par. 28). Hennessy also contends that her position was later reinstated. However, as explained above, the record indicates otherwise. Also, to the extent that Hennessy could show that at least a part-time secretary was ultimately provided to the EALC Department after the reorganization, there is no evidence that would suggest that it was part of a premeditated plan on the part of Allen to terminate Hennessy's

employment for unlawful reasons. Rather, the record clearly indicates that the part-time secretary was provided since the reorganization plan was not functioning efficiently. Such matters concerning whether the reorganization plan was ultimately successful, relate to the wisdom of Allen's decisions, which as indicated above, is not a proper focus for the pretext analysis.

Hennessy also contends that she "was the only one apparently terminated due to the reorganization." (Ans. SJ 2). However, her statement is contradicted by another portion of her own opposition brief in which she contends that Joann Grencius was terminated as a result of the reorganization. (Ans. SJ 3). In addition, the record is clear that other employees were not terminated because their situations were different than Hennessy. For example, Fox held the Administrative Assistant position rather than a Departmental Secretary position. (P Ex. Fox Eval. 1); (P Ex. Allen Dep. 19); (P Ex. Men Dep. 24). In addition, Zimet was able to move to a Departmental Coordinator position, but Hennessy could not make a similar move since she lacks a bachelor's degree, which is a prerequisite for a Departmental Coordinator position. (R SF Par. 42).

Hennessy has failed to point to sufficient evidence that would indicate that the reorganization plan was part of a scheme on the part of Allen to terminate Hennessy's employment because of her age. Hennessy can no longer rely on the allegations in her complaint that Allen fired her because of her age and Hennessy is required at the summary judgment stage to point to sufficient evidence concerning her alleged discrimination. *See Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir.

13

2007)(indicating that "summary judgment is 'not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events'")(quoting in part *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005)). Thus, even if Hennessy could establish a *prima facie* case, she has failed to point to sufficient evidence of pretext in regard to her termination.

    <u>B.  Failure to Hire</u>

    Hennessy contends in her complaint that the University declined to hire her for other positions because of her age.  The *prima facie* case for an ADEA failure to hire claim requires a plaintiff to show that: (1) she "belongs to a protected group," (2) she "applied and was qualified for a job for which the employer was seeking applications," (3) she "was not hired," and (4) "the employer hired instead a younger person."  *Kralman v. Illinois Dept. of Veterans' Affairs*, 23 F.3d 150, 153-54 (7th Cir. 1994)(quoting in part *Vaught v. R.R. Donnelley & Sons Co.*, 745 F.2d 407, 411 (7th Cir. 1984) and *Caldwell v. National Ass'n of Home Builders*, 771 F.2d 1051, 1056 n.2 (7th Cir. 1985)).  Hennessy apparently has abandoned her failure to hire claims since in her opposition to the University's motion for summary judgment, Hennessy makes no mention of the facts relating to her applications for positions after her termination.  (Ans. SJ 1-3).  The only arguments presented by Hennessy in her opposition address whether her termination was the result of unlawful discrimination and she makes no arguments pertaining to her application for

positions after her termination.  (Ans. SJ 1-6).

In regard to Hennessy's failure to hire claim, Hennessy has failed to show that she properly applied for any position after her termination.  She has also failed to point to evidence to show that younger employees were hired instead of her.  Thus, she has failed to establish a *prima facie* case.  In addition, the University has presented a legitimate non-discriminatory reason for its actions and Hennessy has not pointed to sufficient evidence to show pretext.  Defendants have pointed to evidence that indicates that Hennessy was not discriminated against because of her age when she was not hired for other positions and Hennessy admits that Defendants' version of the facts are undisputed.  For example, Hennessy admits that "[a]lthough [she] began the application process for several different positions, there was only one position, Humanities Division Fiscal Assistant, for which she attempted to complete the steps required to be considered as a candidate."  (R SF Par. 54).  It is also deemed as undisputed pursuant to Local Rule 56.1, that "due to either human error on [her] part or a technological failure in the University's on-line job application system, [her] application for the Fiscal Assistant position was never recognized by the University as being completed."  (R SF Par. 55); *Dent*, 2003 WL 22025008, at *1 n.1 (stating that a denial is improper if the denial is not accompanied by specific references to admissible evidence or at least evidence that represents admissible evidence).  It is thus deemed undisputed that the University was never aware that Hennessy had properly sought another position after her termination.  In addition, Hennessy was specifically asked during her deposition for the basis of her belief that

she was discriminated against when she was not hired for another position. Hennessy was asked what evidence she had that "age played a role in the decision not to select" her for any jobs. (Henn. Dep. 150-51). In response, Hennessy conceded that "besides [her] own belief, [she did not] have any evidence." (Henn. Dep. 150-51). Therefore, we grant the University's motion for summary judgment on the failure to hire claim. Based on the above, we grant the University's motion for summary judgment in its entirety.

## CONCLUSION

Based on the foregoing analysis, we grant the University's motion for summary judgment in its entirety.


_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated:   February 26, 2008